UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

KEITH BRYAN MADDOX-EL,

    Plaintiff,

v.                                                       Case No.  2:14-cv-181
                                                                  HON.  GORDON J. QUIST

ROBERT HANSEN, et al.,

    Defendants.

_____/

REPORT AND RECOMMENDATION

        Plaintiff Keith Bryan Maddox-El filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Robert Hansen and Defendant Colleen Brown.  Plaintiff alleges that Defendants retaliated against him when they confiscated his typewriter and court rules book. Plaintiff alleges that Defendant Hansen retaliated against him when he issued a false misconduct ticket because Plaintiff was wearing solar sunglasses that he had legitimately purchased without a prescription.  Defendants filed a motion for summary judgment.  Plaintiff filed a response to that motion.

        Plaintiff points out that he was allowed to possess his typewriter as a result of the settlement agreement in the *Cain v. MDOC* state court class action lawsuit. (ECF No. 1-3, Page ID. 18).  Plaintiff argues that, as a result of the settlement agreement, the MDOC allowed outside parties to purchase typewriters for prisoners.   Policy Directive 05.07.112(P) allowed outside parties to purchase a typewriter for a prisoner.  Plaintiff's family members purchased a typewriter for Plaintiff in October, 2007.  Between 2007 and 2013, Plaintiff was transferred at least ten different times to

MDOC prisons. Each time, Plaintiff was allowed to possess his typewriter at the new facility. Plaintiff was even allowed to send the typewriter out of the facility for repair and have his repaired typewriter returned to his facility. Plaintiff was transferred to the Ojibway Correctional Facility in February, 2014.

On March 5, 2014, Plaintiff was placed in a temporary segregation cell and given a Notice of Intent for Contraband-not allowed items. Plaintiff was asked to prove that the confiscated typewriter was his typewriter, and that the typewriter was not altered. Plaintiff received a hearing on March 13, 2014. After the hearing it was determined that Plaintiff could possess the typewriter while housed in the MDOC.

On March 17, 2014, Plaintiff was transferred to the Chippewa Correctional Facility. On March 27, 2014, Plaintiff was given a pass to pick up his "catch-up property," which Plaintiff believed would include his typewriter and court rules book. However, Defendant Hansen informed Plaintiff that he was confiscating the typewriter and court rules book because, after going through Plaintiff's property, it was clear that Plaintiff liked to write grievances. Defendant Hansen explained to Plaintiff that he could no longer write grievances at the Chippewa Correctional Facility and, because he wrote too many grievances, his typewriter would be taken from him. Hansen told him "you won't be typing no grievances on my watch. Now go write a f**king grievance on that!"

Plaintiff submitted a complaint to Internal Affairs. On April 10, 2014, Defendant Hansen called Plaintiff into the Property Room and informed Plaintiff that Defendant Hansen had received copies of the complaints sent to the Inspector and the Warden. Defendant Hansen then stated "do you really think they're going to go against me for taking your typewriter and law book. I run the property room, you'll never see your typewriter and book again, and if you write another grievance I'm going to take the rest of your shit when I get the opportunity."

Defendant Brown conducted an administrative hearing on the Notice of Intent on April 29, 2014. Despite recognizing that Plaintiff was allowed to possess the typewriter at other prisons, and despite knowledge that a prior hearing decision on this issue had allowed Plaintiff to keep the typewriter, Defendant Brown upheld the confiscation and ordered the typewriter sent out of the facility. She also fined Plaintiff for altering his court rules book. Defendant Brown wrote:

> I find that the typewriter is contraband due to alterations (factory numbers have been removed[)], crudely melted serial number on typewriter that do not match neatly engraved serial numbers also on typewriter. Pack up slips and transfer property slips do not show prisoner owned a typewriter. Prisoner accounting does not show purchase of a typewriter by Maddox. Also prisoner produced a repair receipt for bill of repair (money order on 11/11/11 that was an unauthorized payment) that violated policy 04.07.112 § R which states in part "the cost of the requested repair may not exceed the cost of purchasing the item new from the current standardized property list even if the item on the list is a different make and model. Maddox typewriter was never an approved model per 04.07.112 § D. Prisoner could not produce purchase receipt. Prisoner cannot produce receipt for purchase of law book also.

(ECF No. 1-4, Page ID. 66).

On June 10, 2014, Defendant Hansen told Plaintiff that he had read all the grievances that Plaintiff had written against Defendant Hansen. They had all been rejected. Defendant Hansen stated, "I told you that I was going to take your property for filing grievance[s]." Defendant Hansen told Plaintiff to give him his solar glasses because he did not have a medical detail for solar glasses. Plaintiff was issued a contraband removal form for his solar glasses. On June 10, 2014, Plaintiff submitted a grievance on this issue. On June 17, 2014, Defendant Hansen issued Plaintiff a misconduct report. Plaintiff argues that the misconduct was in retaliation for his grievance filing. Defendant Brown conducted the hearing on the misconduct. She concluded that the solar glasses would be returned to Plaintiff because no detail was necessary for solar glasses. Defendant Brown

found Plaintiff guilty of the misconduct because he had lied to Defendant Hansen by indicating that he had a medical detail for the solar glasses. (ECF No. 1-4, Page ID. 76). Defendants argue that Plaintiff cannot support his claims of retaliation against them. Defendants argue that they are entitled to summary judgment and dismissal of this case.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant Hansen argues that he was not aware of any grievances that Plaintiff may have submitted prior to the time that he wrote the initial contraband removal form for the typewriter and the court rule book. Defendant Hansen indicates that he would have issued the contraband removal despite Plaintiff's grievance filings, because he is concerned about prisoners having excess property and contraband which may pose a security risk. Defendant Hansen explains that contraband may be used to barter for favors such as protection, other non-legitimate items, and for other non-tangible things. Defendant Brown argues that she merely performed her job as the hearings officer and would have taken the same action regardless of Plaintiff's grievance filing activities.

In the opinion of the undersigned, a question of fact exists whether Defendants acted in retaliation by removing Plaintiff's typewriter and court rules book. Plaintiff has alleged facts that, if true, could establish that Defendants acted in retaliation. Plaintiff has asserted that Defendant Hansen told him that he would take his typewriter and court rule book because of Plaintiff's actions in writing too many grievances. Further, Plaintiff indicates that Defendant Hansen said that he would stop Plaintiff from typing grievances, and that if Plaintiff continued to write grievances,

- 5 -

Defendant Hansen intended to take the rest of Plaintiff's property. As Plaintiff has alleged, Defendant Hansen did just that when he confiscated Plaintiff's solar glasses and issued Plaintiff a misconduct ticket.

There are several problems with the confiscation of the typewriter. Plaintiff possessed the typewriter since 2007, and had the typewriter at a number of different prison institutions without any problem. Plaintiff's typewriter was confiscated at a different institution approximately one month before Defendant Hansen confiscated the typewriter. However, after a hearing, the typewriter was returned to Plaintiff. Plaintiff alleges that in 2007, he received the typewriter through a prison policy that arose out of the *Cain* settlement agreement. Defendants never addressed whether Plaintiff had the typewriter legitimately as a result of the *Cain* settlement agreement and prison policy. As MDOC officers, Defendants should be aware of the *Cain* settlement agreement. Defendants should also know that they cannot infringe inmates' rights that arose out of that settlement. Further, Plaintiff had his typewriter sent out of his prison facility for repairs at least twice, and each time the typewriter was repaired and returned to Plaintiff without incident. In the opinion of the undersigned, a question of fact exists regarding whether Defendants acted with retaliatory intent in confiscating Plaintiff's typewriter and court rule book. Further, a question of fact exists regarding whether Defendant Hansen wrongfully confiscated Plaintiff's solar glasses in retaliation for Plaintiff's grievance filings.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation, or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). However, because it is recommended that the court find the existence of a genuine issue of material fact on the issue of retaliation, it is recommended that the court deny Defendants' request to invoke the qualified immunity defense.

Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 17) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:   November 6, 2015             /s/ TIMOTHY P. GREELEY
                                                            TIMOTHY P. GREELEY
                                                            UNITED STATES MAGISTRATE JUDGE